IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE AMERICAN INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br>v.<br><br>LIBERTY SURPLUS INSURANCE CORPORATION, GREENWICH INSURANCE COMPANY,<br><br>Defendants.<br>_____<br>AND RELATED CROSS-ACTIONS.<br>_____/ | CASE NO. 5:11-cv-03159-LHK<br><br>**MEMORANDUM OPINION ON MOTIONS FOR PARTIAL SUMMARY ADJUDICATION (DOCS. 70, 81, 85).** |

This is an action for a declaratory decree, with associated claims or causes of action, brought by The American Insurance Company to have the Court interpret two separate policies of insurance issued, respectively, by Liberty Surplus Insurance Corporation and Greenwich Insurance Company. The specific question presently posed for decision is whether those companies are obligated to defend an ongoing action in state court which is presently being defended by American Insurance Company alone.

Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1332, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The Parties – the American Insurance Company ("American"), Liberty Surplus Insurance Company ("Liberty"), and Greenwich Insurance Company ("Greenwich") – have all filed motions or cross-motions for partial summary judgment under Rule 56, Federal Rules of Civil Procedure, and there appears to be no genuine issue of material fact preventing summary disposition with respect to the threshold issue of whether coverage appears to exist in the Liberty and Greenwich policies for purposes

of raising a duty to defend.[1]

The case has been thoroughly briefed and oral argument has been heard. In summary, the Court concludes that all three of the insurance carriers involved in this case have a duty to defend the state court action, but Liberty's obligation is primary to that of American so that, in effect, the responsibility to provide a complete defense of the action shoudl be shared (in a manner yet to be determined) by Liberty and Greenwich.

## I.

## **The Facts.**

Before any dispute arose that is relevant to this case, an apartment complex consisting of several hundred units was constructed and occupied in Santa Clara, California, known as the Mansion Grove Apartments. The complex was owned and/or operated by Prometheus Real Estate Group, Inc., a California corporation ("Prometheus"), Lick Mill Creek Apartments ("Lick Mill"), and several other California limited partnership companies that participated in the management of the property.

On July 23, 2008, a class action complaint – the underlying state court action – was filed in the Superior Court of Santa Clara County by Mansion Grove tenants against Prometheus and Lick Mill. The complaint alleged that prior to June, 2007, The Mansion Grove Apartments "offered the rather unique setting of a large, urban style apartment complex in the middle of a quiet park-like environment." (Doc. 79-4, ¶ 16). The complaint then alleged that on or about June 27, 2007, the owner/managers of Mansion Grove applied for building permits necessary to expand the complex by building seven new multi-unit structures on the grounds of the property. The additions were planned as large stand alone structures as distinguished from additions to the existing buildings. Nevertheless, tenants of Mansion Grove who signed or renewed leases after June 27, 2007, had addenda attached to their leases entitled "Future Renovations" stating that the property "may" be undergoing "renovations" for a period that "may" exceed one year. (Doc. 79-4, ¶ 25). The Plaintiff class in the state court action was defined as all persons who entered into a lease agreement after June 27, 2007 for a fixed term tenancy in Mansion

---

[1] Numerous cross-claims and third party claims were previously dismissed, leaving only the claims raised in the pending motions for summary judgment that are addressed in this memorandum opinion.

2

CASE NO.
TITLE

1 Grove. In summary, the core assertion in the tenants' complaint was that the members of the class had
2 been fraudulently induced to enter into their leases and, further, that the new construction was being
3 carried out in a way that changed Mansion Grove "from being a serene, peaceful, and green
4 environment to an outrageously noisy, dusty and unattractive work site." (Doc. 79-4, ¶ 28). The
5 complaint was structured in seven enumerated counts or causes of action: (1) breach of the covenant
6 of quiet enjoyment (Civil Code § 1927); (2) nuisance (contract); (3) nuisance (tort); (4) fraud; (5)
7 negligent misrepresentation; (6) declaratory relief; and (7) violation of Business and Professional Code
8 § 17200, *et seq.* The prayer of the complaint sought both damages and injunctive relief.

## II.

## **The Insurance Policies.**

American issued a commercial general liability policy to Prometheus and Lick Mill effective from May 1, 2008 to May 1, 2009. It provided $1 million of general liability coverage per occurrence subject to an aggregate of $ 2 million. Defense of the underlying class action in state court was tendered to American by its insureds, and American has been defending the action without participation by either Liberty or Greenwich. The Court was informed at oral argument that the state court suit has been certified as a class action and is presently set for trial later this month. By this action, American seeks a determination that both Liberty and Greenwich are obligated to provide a defense in the underlying state court suit and to share in the defense expenses already incurred.

**A.** **Liberty's Policy.** Liberty issued a general liability policy to the general contractor (Johnstone Moyer, Inc.) engaged by the Mansion Grove owners/managers to construct the new buildings on the Mansion Grove property.[2] The policy was effective from May 28, 2008, to May 28, 2009, and provided $1 million of general liability coverage per occurrence, subject to certain deductibles.

The relevant provisions of the Liberty policy governing the present dispute are:

Section I – Coverages

---

[2]On June 13, 2008, Johnstone Moyer entered into a site preparation agreement with Lick Mill and Prometheus, followed on September 11, 2008 by a construction contract for the new construction at Mansion Grove. Both contracts required Johnstone Moyer to have the Prometheus/Lick Mill entities named as additional insureds on Johnstone's general liability insurance, and there is no dispute that Lick Mill and Prometheus are additional insureds under Liberty's policy, "but only with respect to liability arising out of [Johnstone's] ongoing operations performed for" those insureds.

3
CASE NO.
TITLE

Coverage A.  Bodily Injury and Property Damage Liability

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

\* \* \* \*

Coverage B.  Personal and Advertising Injury Liability

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \* \*

Section V – Definitions

\* \* \* \*

3. Bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \* \*

CASE NO.
TITLE

4

13. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. Personal and advertising injury means injury, including consequential bodily injury, arising out of one or more of the following offenses:

* * * *

    c.    The wrongful eviction from, wrongful entry into , or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

* * * *

17. Property damage means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . .

* * * *

PRIMARY INSURANCE CLAUSE ENDORSEMENT

To the extent that this insurance is afforded to any additional insured under the policy, such insurance shall apply as primary and not contributing with any insurance carried by such additional insured, as required by written contract.

Nothing herein contained shall be held to waive, vary, alter or extend any condition or provision of the policy other than as above stated.

**B.** **The Greenwich Policy.** The Greenwich policy provides private company management liability and reimbursement coverage to Lick Mill and Prometheus for a policy period from May 1, 2008, to May 1, 2009. For present purposes, the relevant terms of the policy are:

GENERAL TERMS AND CONDITIONS

* * * *

I.    DEFENSE OBLIGATIONS

The Insurer has the right and duty to defend any Claim against any Insured covered under this Policy, even if such Claim is false, fraudulent or groundless.

* * * *

III.    GENERAL CONDITIONS

5

CASE NO.
TITLE

\* \* \* \*

(E) OTHER INSURANCE

All Loss payable under this Policy will be specifically excess of, and will not contribute with, any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

\* \* \* \*

MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT COVERAGE PART

\* \* \* \*

    I.    INSURING AGREEMENTS

\* \* \* \*

(B) The Insurer shall pay on behalf of the Company Loss:

\* \* \* \*

(2) resulting from a Claim first made against the Company; during the Policy Period, or, if applicable, the Optional Extension Period, for a Wrongful Act.

\* \* \* \*

    II.    DEFINITIONS

(E) "Wrongful Act" means:

\* \* \* \*

(2) with respect to the Company, any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Company,

\* \* \* \*

    III.    EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss, and shall have no duty to defend or pay Defense Expenses, in connection with any Claim made against an Insured:

\* \* \* \*

(C) for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof;

6

CASE NO.
TITLE

\* \* \* \*

(G)     for any actual or alleged liability of the Company under any express contract or agreement.

## III.

## The Issues.

**A.**     **With Respect to Liberty.** American contends that at least some of the claims made in the state court suit are within the coverage afforded by the Liberty policy, and that Liberty therefore has a duty to defend the state court action. The argument rests upon California law that the duty to defend an insured, as distinguished from a duty to indemnify, arises whenever the underlying claim <u>may</u> fall within the coverage of the policy. <u>Montrose Chemical Corp. v. Superior Court</u>, 861 P.2d 1153 (Cal. 1993). Any doubt is resolved in favor of the insured, <u>Horace Mann Insurance Company v. Barbara B.</u>, 846 P.2d 792 (Cal. 1993), and in a mixed case where some claims of the underlying litigation may trigger coverage while other claims will not, the insurer has a duty to defend the entire action. <u>Buss v. Superior Court</u>, 939 P.2d 766 (Cal. 1997).

Liberty's response expends a great deal of energy arguing that the underlying suit is an action for fraud, which its policy does not cover. The argument is made as though the other claims – especially the claim for breach of quiet enjoyment (Civil Code § 1927) and the tort claim for maintaining a nuisance – did not exist. While it is true that mere labels used in a complaint or other issue pleadings should not exclusively be relied upon to define a claim or cause of action, <u>CNA Casualty of California v. Seaboard Surety Co.</u>, 222 Cal. Rptr. 276 (Ct. App. 1986), the allegations of the underlying complaint in this instance appear sufficient to state a breach of the covenant of quiet enjoyment and/or a cause of action for nuisance.[3]

Liberty parries the latter point by asserting that under the coverage afforded by its policy for bodily injury and property damage, there must be an "occurrence" which, in turn, is defined as an "accident." And, where an insured engages in intentional conduct resulting in a victim's injury, the

---

[3] The case has been pending in state court for four years and is now set for trial later this month. No representation has been made that the claims or issues have been narrowed by court ruling or by voluntary action, and the Court therefore presumes that all of the causes of action as enumerated in the complaint are still viable as the case proceeds to final hearing.

7

CASE NO.
TITLE

event is not properly categorized as "accidental" merely because the injury itself was not intended. Collin v. American Empire Ins. Co., 26 Cal. Rptr. 391 (Ct. App. 1994); Merced Mutual Ins. Co. v. Mendez, 261 Cal. Rptr. 273 (Ct. App. 1989). Liberty's problem advancing this argument is that it overlooks, and does not take into account, California law to the effect that a tortious nuisance may be established by proof of either intentional or negligent conduct,[4] and the allegations of the underlying complaint with respect to the "nuisance (tort)" cause of action may be sufficient at the trial of the state case, depending upon the evidence actually adduced, to permit the plaintiffs to pursue (and have the jury instructed about) a theory of negligent nuisance with resulting damages that could be within Liberty's afforded coverage. In any event, as previously noted, that possibility is enough to invoke Liberty's duty to defend.[5]

American also relies, additionally and alternatively, upon Liberty's coverage of "Personal and Advertising Injury Liability" which includes "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of . . . premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (See page 5, supra). The principal authority for American's argument here is Martin Marietta Corp. v. Insurance Co. of North America, 40 Cal. App. 4th 1113, 1131 (1995), in which the court found the words "invasion of the right of private occupancy" to be ambiguous and, when construed in favor of the insured as required in such circumstances, the phrase was viewed as broad enough to encompass claims for nuisance. Liberty's answer to Martin Marietta is that the policy language interpreted by the court at that time was later changed in the standard form

---

[4] Walnut Creek Manor, LLC v. Mayhew Center, LLC, 662 F. Supp. 2d 918, 932-33 (N.D. Cal. 2009) (citing Gdowski v. Louie, 84 Cal. App. 4th 1395, 1408 (2000) and quoting Lussier v. San Lorenzo Valley Water District, 253 Cal. Rptr. 470 (Ct. App. 1989)).

[5] Liberty's general liability coverage (Coverage A), is limited not only by the definition of an "occurrence," but also by the definitions of "bodily injury" and "property damage." The latter term, for example, includes only "physical injury to tangible property;" and, under California law, a leasehold interest in real estate is deemed to be personal property. In re Marino, 813 F.2d 1562, 1566 (9th Cir. 1987) (citing Dabney v. Edwards, 53 P.2d 962, 964 (Cal. 1935) and Callahan v. Martin, 43 P.2d 788, 792-93 (Cal. 1935)). Thus, it remains to be seen, with respect to the duty to indemnify, how the state case actually turns out. That is, more specifically, it remains to be seen whether the state court reshapes or eliminates some claims, or submits all of the Plaintiffs' various claims to the jury and gets a specific jury resolution concerning alternative legal theories and the elements and amounts (if any) of the recoverable damages attributable to each claim. That form of resolution would obviously be helpful in sorting out the respective indemnity obligations of the three insurers, but, again, that determination cannot and need not be made in passing on the duty to defend.

8

CASE NO.
TITLE

comprehensive general liability policy to omit the phrase "or other invasion of the right of private occupancy" and to substitute, instead, the definition of the covered offense as now contained in the Liberty policy: "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor." (See page 5, supra).  It is by no means clear, however, that the change in language benefits Liberty in this case.  The Liberty policy still uses the phrase "invasion of the right of private occupancy," interpreted by Martin Marietta to be broad enough to embrace claims of nuisance, and while the remaining language of the insuring clause may be construed to limit the coverage to physical invasion or displacement of a tenant from occupied premises by or on behalf of the landlord, those elements may well exist in the state court action.  The state court complaint alleges that the tenants have been physically displaced from the community recreation center and parking facilities (Doc. 79-4, ¶¶ 31-32), to say nothing of the alleged physical intrusion of "dust and other construction particulates." (Id., ¶ 29).[6]  While the acts producing these results were no doubt committed by Johnstone Moyer, the general contractor, all of such acts were carried out "on behalf of" Prometheus and Lick Mill by Johnstone Moyer under the site preparation and construction contracts.

The Court therefore concludes that Liberty owes a defense of the state court action, and while its duty to indemnify may not cover all of the plaintiffs' claims and resultant damages, if any, the duty to defend nevertheless extends to the action as a whole.  Buss v. Superior Court, supra.

Moreover, Liberty's duty to defend the state court action is primary in relation to the duty of American.  Prometheus/Lick Mill purchased the American policy containing a provision that its coverage is excess over any other primary insurance available to Prometheus/Lick Mill.  The insureds then entered into a contract with Johnstone Moyer that specifically required the contractor to purchase commercial general liability insurance naming Prometheus/Lick Mill as additional insureds and providing primary, non-contributory coverage.  These were the circumstances under which the Liberty

---

[6] Liberty cites Sterling Builders, Inc. v. United National Fire Ins. Co., 93 Cal. Rptr. 697 (Ct. App. 2000) for the proposition that noise and vibrations are not covered in California as a physical invasion, but that does not account for the entire spectrum of the plaintiffs' claims in the state court action.

9

CASE NO.
TITLE

1 policy was purchased, including the endorsement[7] quoted supra., page 5, that the coverage afforded to
2 the additional insureds "shall apply as primary and not contributing with any insurance carried by such
3 additional insured, as required by written contract."

4     Liberty cites Maryland Cas. Co. v. Nationwide Mutual Ins. Co., 97 Cal. Rptr. 2d 374 (Ct. App.
5 2000) for the proposition that a policy provision for primary and non-contributory coverage afforded
6 to an additional insured should not be enforced when to do so would render the secondary insurer liable
7 to defend the insured for acts covered by the insured's own commercial general liability insurer, but not
8 covered by the secondary carrier. As American points out, however, Maryland Casualty Company is
9 distinguishable because here the coverages extended by American and Liberty are the same. Liberty
10 is not asked to shoulder the cost of defending any additional risk covered by American but not by
11 Liberty, and the endorsement to the Liberty policy was a contractually agreed upon shifting of that
12 expense. In harmony with that contractual arrangement, American's policy expressly provides that
13 when its insurance is excess, it will have no duty to defend the insureds (Prometheus and Lick Mill)
14 against any suit that another insurer has a duty to defend. (See Doc. 79-9, pp. 66-67). There are
15 circumstances in which that provision may not be enforceable under California law (Maryland Casualty
16 Co. v. Nationwide Mutual Ins. Co., being one example), but in this case it is clearly the result intended
17 by both the insureds and the two insurers, American and Liberty. That result should be enforced.

18     **B.**     **With Respect to Greenwich.** The Greenwich policy provides private company
19 management liability and reimbursement coverage to Prometheus and Lick Mill for a policy period
20 running from May 1, 2008, to May 1, 2009.

21     The pertinent insured risk or "wrongful act" covered by the Greenwich policy is, "with respect
22 to the company, any actual or alleged act, error, omission, misstatement, misleading statement or breach
23 of duty by the Company." (See p. 6, supra). This insuring clause clearly covers the fraud and
24 misrepresentation claims or cause of action being prosecuted in the state court action, and Greenwich

---

[7] It is of some significance, in terms of the intent of the interested parties, that the operative provision of the insuring documents relating to this issue was an endorsement bargained for (and presumably paid for) in addition to the standard commercial general liability policy. This reinforces the conclusion that the endorsement meant what it says and should be enforced according to its terms. Hartford Cas. Ins. Co. v. Travelers Indem. Co., 110 Cal. App. 4th 710, 726-27 (2003).

10
CASE NO.
TITLE

1  does not contend otherwise. It follows that Greenwich has both a contractual[8] and a legal duty to defend
2  the state court suit together with American and Liberty (Liberty being primary in relation to American
3  as previously determined).

4  Greenwich's response to this conclusion is two fold. It first argues that the "Other Insurance"
5  provision in its policy (see p. 6, supra), places it in an excess position in relation to American and
6  Liberty. That argument is meritless, however, for the simple reason that the "Other Insurance" clause
7  does not apply in this case. The term "Other Insurance" necessarily means other insurance <u>covering the
8  same risk,</u>[9] and here, neither of the commercial general liability policies issued by American or Liberty,
9  respectively, cover the fraud or misrepresentation allegations of the state court complaint, nor does the
10 Greenwich policy insure the nuisance claims that are covered by American and Liberty.

11 Greenwich's second argument – not made in its own motion (Doc. 85) and only lately reaised
12 in its response (Doc. 109) to the motions of American and Liberty – is that its policy exclusion of any
13 "actual or alleged bodily injury, sickness, mental anguish [and] emotional distress . . ." (see p. 6, supra),
14 eliminates any duty to defend the case in state court. This argument is too broad, and it fails because
15 it is possible, if the state court plaintiffs prevail on their fraud and misrepresentation claims, that
16 economic damages might be awarded. It bears repeating that the issue of the moment is the duty to
17 defend, not the duty to indemnify.

### IV.

### **Conclusion**

20  1. The Court GRANTS IN PART the parties' several motions for summary judgment (Docs.
21 70, 81, and 85) to the extent that the Court now ORDERS, ADJUDGES, AND DECLARES that
22 American, Liberty, and Greenwich each have a duty to defend the underlying state court action in its

---

[8]The Greenwich policy states, under the heading General Terms and Conditions – Defense Obligations, that the insurer has a duty to defend any claim covered by the policy even if such claim is false, fraudulent, or groundless. See p. 5, supra.

[9]See Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1304 (1998). See also Pines of La Jolla Homeowners Ass'n. v. Industrial Indemnity, 39 Cal. App. 4th 714, 723 (1992) ("The application of 'other insurance' clauses requires, as a foundational element, that there exist multiple policies applicable to the same loss"); and Fire Insurance Exchange v. American State Ins. Co., 39 Cal. App. 4th 653, 660 (1995) (same).

11

CASE NO.
TITLE

United States District Court
For the Northern District of California

1 entirety, with the duty of Liberty being primary to the duty of American so that, in final effect, the
2 burden of the defense should be shared by Liberty and Greenwich in a manner yet to be determined in
3 this action.

4     2. In all other respects, except as provided in Paragraph 1, the motions for summary
5 judgment or partial summary judgment (Docs. 70, 81, and 85) are severally DENIED. Further, any
6 argument, assertion, claim or contention previously made by any Party but not specifically identified
7 and discussed in this Memorandum Opinion has been considered and DENIED.

8     3. The Court reserves jurisdiction to hear and decide all unresolved issues framed by the
9 pleadings.

10     4. Third-Party Defendant/Cross-Defendant American Safety Indemnity Company's Notice
11 of Intent to Be Heard on Pending Motions for Summary Judgment and to File a Position Statement
12 (Doc. 130) is DENIED AS MOOT.

13 **IT IS SO ORDERED.**

16 Dated: August 13, 2012

_____
UNITED STATES DISTRICT JUDGE

CASE NO.
TITLE